IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TENTH STREET BUILDING CORPORATION,<br>    Plaintiff | )<br>)<br>)<br>) |
| v. | )    CIVIL ACTION NO. 03-359 Erie<br>) |
| BP PRODUCTS NORTH AMERICA INC., f/k/a and successor to BP OIL COMPANY, f/k/a and successor to BORON OIL COMPANY, and DONALD TRAPP,<br>    Defendants | )<br>)    JUDGE COHILL<br>)<br>)<br>)<br>)<br>) |

### BRIEF IN SUPPORT OF DEFENDANT DONALD TRAPP'S MOTION FOR DISMISSAL

Defendant, Donald Trapp, by his attorney, Thomas A. Testi, Esquire, hereby files this Brief in support of his Motion for Dismissal of the Civil Action filed at No. 03-359 Erie against said Defendant, Donald Trapp, for the reasons set forth hereafter:

I.
STATEMENT OF FACTS

1. The Plaintiff is the Tenth Street Building Corporation of Erie, which is a Pennsylvania corporation that maintains a principal place of business located at 5 West Tenth Street, Erie, Pennsylvania, 16501, and shall be referred to hereafter simply as "Plaintiff".

2. The Defendant, BP Products North America, Inc. is a corporation organized and existing under the laws of a state other than Pennsylvania and that maintains a principal place of business located at 4850 East 49th Street, Cuyahoga Heights, Ohio, 44125, and

was formerly known as and/or is the successor to PB Oil Company, a division of BP Exploration & Oil, Inc., which was formerly known as and/or was the successor to Boron Oil Company, an Ohio corporation, and shall hereafter be referred to simply as "Defendant BP".

3. The Defendant, Donald Trapp, is an adult individual who currently resides at 9161 Kuhl Road, Erie, Pennsylvania, 16510, and shall hereafter be referred to as "Defendant Donald Trapp".

4. Ran Oil Company, LLC is a corporation believed to be organized and existing under the laws of the Commonwealth of Pennsylvania, which maintained a principal place of business at all times material hereto at 122 Erie Street, Edinboro, Pennsylvania, 16412, owned and operated by general manager Rudolph A. Novotny, an adult individual who at all times material hereto conducted his duties as general manager of the Ran Oil Company, LLC at the Edinboro, Pennsylvania principal offices of the Ran Oil Company, and shall be referred to hereafter simply as "The Ran Oil Company".

5. The Ran Oil Company would be considered an indispensable party to these proceedings, however, said company filed for federal bankruptcy protection at or about the same time as the facts occurred or are alleged to occur under the facts of this case.

6. By mutual agreement of the Plaintiff and the Defendant BP, entered into a lease and then into a series of extensions of said lease for the premises located at 3875 Peach Street, Erie, Pennsylvania, 16509, which premises were utilized and operated as a gasoline service and repair station.

7. The Defendant, Donald Trapp, operated the service and repair station at the premises since the 1980s as the owner and operator of the business.

8. On or about December 18, 1996, the Defendant BP entered into a Dealer Lease and Supply Agreement with the Defendant, Donald Trapp.

9. On or about December 1, 1999, the Defendant BP notified the Plaintiff or its predecessor that it was assigning its interest in the lease to the Ran Oil Company.

10. Defendant Donald Trapp was not aware that the Defendant BP was going to assign its interest in his lease to any other party.

11. Once the Defendant, Donald Trapp, became aware of the assignment of lease to the Ran Oil Company, he attempted to secure a written extension of his lease with the said Ran Oil Company.

12. On or about July 18, 2002, the Plaintiff and Defendant BP together with the Ran Oil Company, entered into a Lease Extension Agreement that extended the lease through January 31, 2003.

13. The Defendant, Donald Trapp, was assured that the Ran Oil Company had extended its lease with the Plaintiff through 2007 and Defendant Donald Trapp relied on such representations at all times material hereto.

14. The Defendant, Donald Trapp, continued to request written confirmation of the extension of his lease with Ran Oil Company and was repeatedly advised that the written

document would be delivered to him within the near future.

15. At all times prior to January 31, 2003, the Defendant, Donald Trapp, promptly paid his lease payments to Ran Oil Company and maintained his obligations under his lease agreement with the said Ran Oil Company.

16. The Plaintiff was aware that Defendant Donald Trapp was operating a going concern gasoline service and repair station on the premises and that he had been operating at the location prior to Plaintiff's lease with the Ran Oil Company.

17. Immediately upon discovery of Ran Oil Company's financial difficulties, the Defendant, Donald Trapp, attempted to negotiate a direct lease for the premises with the Plaintiff, and believed that such discussions were proceeding in good faith and he offered to pay at least the same amount to the Plaintiff that he had been paying as lease payments to the Ran Oil Company, which amount would have been substantially more that the lease payments that the Plaintiff had been receiving from the Ran Oil Company.

18. Defendant Donald Trapp explained to Plaintiff after receipt of the ejectment action that he needed additional time to terminate his business and to remove the fuel from the tanks and was advised by Plaintiff that a reasonable amount of time would be granted to him to vacate the premises.

19. Defendant Donald Trapp then vacated the premises in an orderly manner and transferred the keys and possession of the premises to a representative of the Plaintiff on an handshake agreement that the ejectment action would be dismissed.

20. Defendant Donald Trapp then attempted to secure financing so that he could relocate his going concern business to a different location and was advised during the fall of 2003 that the ejectment action had not been discontinued.

21. Defendant Donald Trapp then contacted the Plaintiff and explained that he could not move on with his life and business without financing for another venture and asked that the ejectment action be dismissed.

22. Plaintiff then dismissed the ejectment action and prior to Defendant Donald Trapp's finalization of his financing, filed the instant action in the Court of Common Pleas of Erie County which filing prevented Defendant Donald Trapp from securing the financing needed to relocate his going concern business venture.

23. Defendant Donald Trapp has remained unable to secure financing due to the pendancy of this current action and thus has been unable to this date to relocate his business to an appropriate location and has suffered severe monetary losses as a consequence of the loss of the going concern value of his prior business.

## II.
## SUMMARY OF ARGUMENT

24. As this Honorable Court is well aware, pursuant to the terms of this Honorable Court's February 28, 2005 Order, this case should be dismissed.

25. As the Court is aware, the "parties" to this case are the Plaintiff, Tenth Street Building Corporation, and the Defendants, BP Products North America, Inc., f/k/a and

successor to BP Oil Company, f/k/a and successor to Boron Oil Company, and the Defendant, Donald Trapp.

26. The Court's Order dated September 1, 2005 stated that any party wishing to lift the stay could do so by setting forth their reasons in a motion to lift the stay filed with the Court no later than September 9, 2005, or, in the alternative, that the parties shall, prior to September 9, 2005, file a stipulation for dismissal of the action, and, that if the parties do not move to lift the stay or file a stipulation for dismissal by September 9, 2005, that the action would be dismissed.

27. The Court's September 1, 2005 Order was received by Counsel for Defendant Donald Trapp on Friday, September 2, 2005 and local counsel for the co-Defendant was contacted by Counsel for Defendant Donald Trapp to discuss filing a joint motion for dismissal of the action.

28. Several communications were forwarded and directed to counsel for co-Defendant and the first response received was at 5:00 p.m. Tuesday afternoon. At that time, counsel for co-Defendant indicated that he had already entered into a joint motion with counsel for Plaintiff to lift the stay.

29. Defendant Trapp has thus far not received a copy of the joint motion and Defendant Donald Trapp was not asked to join in the joint motion, even though counsel for

Defendant Donald Trapp has joined in prior joint stipulations with the other parties to this matter.

30. Defendant Donald Trapp does not join in the joint motion to lift the stay ordered and imposed by the Court in the Court's Order of February 28, 2005.

31. Prior to February 28, 2005 and subsequent to February 28, 2005, Defendant Donald Trapp has made numerous requests for settlement discussions with Plaintiff and has extended Plaintiff all of the records and information available and known to Defendant Donald Trapp that are deemed material to this case.

32. Prior to February 28, 2005, and subsequent to February 28, 2005, Defendant Donald Trapp has received absolutely no settlement inquiries or communications nor have any of Defendant Donald Trapp's prior requests for settlement discussion been answered by Plaintiff.

33. It was and remains the understanding of Defendant Donald Trapp that the Court issued the stay of proceedings based on the Court's belief that the parties were engaged in active settlement discussions but that the Court wished to place a reasonable time limit on negotiations between the parties.

34. Defendant Donald Trapp believes and avers that the Plaintiff has not engaged in any litigation negotiations of any kind with the Defendant Donald Trapp subsequent to this Court's Order of February 28, 2005.

35. Plaintiff refers to a Lease Extension Agreement within its Complaint that it attached as Exhibit C to said Complaint and Plaintiff alleged in said Complaint that Defendant Donald Trapp was repeatedly given notice that the lease attached at Exhibit C to Plaintiff's Complaint had a termination date of January 31, 2003 and that Defendant Donald Trapp was notified by the Plaintiff that Defendant Donald Trapp's failure to surrender the property and continued use of the property would result in damages and other losses to the Plaintiff, including Plaintiff's contractual obligations to a new lessee of the property.

36. As noted previously, Defendant Donald Trapp believed that his lease expired during the year 2007 and when he was advised that the lease termination date was January 31, 2003, he then immediately entered into discussions with the Plaintiff to enter into a direct lease on the premises.

37. Defendant Donald Trapp made diligent efforts to negotiate his own direct lease with the Plaintiffs, as evidenced by letters to Plaintiff dated January 23, 2003 and January 28, 2003, in which communications repeatedly requested a direct lease with the Plaintiffs since he had operated his business as a going concern on the premises for more than twenty years with annual sales of approximately $1,000,000 annually. It is recognized

that these communications cannot be entered into as evidence at this time, but such are available for inspection and review at any Hearing deemed necessary by this Court.

38. Defendant Donald Trapp was under the impression that he was negotiating in good faith with the Plaintiffs for the execution of a direct lease with the Plaintiffs for the premises and that he was not under an obligation to vacate the premises on January 31, 2003.

39. Defendant Donald Trapp advised Plaintiff on January 28, 2003 that in accordance with the Petroleum Marketing Practices Act of 1977, as amended, pursuant to Section 2804 thereof, prior to the termination of any franchise or nonrenewal of any franchise, the franchisor shall furnish notification of any such proposed termination to the franchisee not less than 90 days prior to the date on which such termination or nonrenewal takes place, and, that as of that date, that he had not received any such communications.

40. Defendant Donald Trapp does not have any privity of contract with the Plaintiff nor with the new tenant that entered into the lease for the premises, which new tenant Defendant Donald Trapp believes was a daughter of a principal of the Plaintiff.

41. Defendant Donald Trapp did not have any privity of contract with Plaintiff and thus cannot be held to account for incidental and consequential damages associated with his

lease of the premises since no such damages were conceivable at the time that he entered into his sub-lease agreement with Plaintiff's lessee.

42. Defendant Donald Trapp did not engage in any intentional trespass of the premises since he believed that he was dealing in good faith with the Plaintiff for execution of a direct lease with Plaintiffs for the premises.

43. Defendant Donald Trapp avers and believes that he has made a good faith effort to cooperate fully with Plaintiffs and that he vacated the premises immediately upon discovery that Plaintiff would not execute a direct lease with him.

44. Plaintiffs filed a Praecipe with the Court of Common Pleas marking the ejectment action at that court at No. 60015-03, Civil Action-Equity, as Settled, Discontinued, and Settled.

45. Defendant Donald Trapp believes that he has acted in good faith and that he has cooperated fully in providing information regarding his participation in the Underground Storage Tank Indemnification Fund (USTIF) available to the Plaintiff that Defendant Donald Trapp believes resulted in a favorable eligibility determination from the insurance provider during early October of 2004.

46. Plaintiff has simply not engaged in any discussions whatsoever with Defendant Donald Trapp pursuant to and or according to this Court's Order of February 28, 2005.

III.
CONCLUSION

47. The Plaintiff has failed to engage in any settlement discussions whatsoever with the Defendant, Donald Trapp, since February 28, 2005, in spite of and in direct conflict with representations which were made that alleged that discussions were ongoing and would continue to be ongoing from that date by the parties, consistent with this Honorable Court's February 28, 2005 Order, and Plaintiff has thus and otherwise failed to comply with and abide with the terms of the Court's February 28, 2005 Order.

48. Defendant BP entered into a unilateral concession with Plaintiff to file a Motion with the Court apparently asking that the Court lift the stay. This action was apparently taken without regard to the interests of the Defendant Donald Trapp and was apparently taken in direct disregard for the opinions of Defendant Donald Trapp and as such, such action was not only in direct conflict with the interests of the Defendant, Donald Trapp but detrimental to his interests as well.

49. This Honorable Court has previously recognized that stipulations and agreements entered into by the parties may violate prior Orders of the Court and has taken the position of negating and disallowing stipulations that violate and disregard the Court's intentions and written Orders. Defendant Donald Trapp therefore hereby asks that this Honorable Court to "not" lift the stay of proceedings ordered and imposed by the Court in the Court's Order of February 28, 2005 and asks that the case be dismissed against him at this time.

NOW THEREFORE, Defendant Donald Trapp respectfully asks that this Honorable Court dismiss the Plaintiff's suit at this time.

                                                Respectfully submitted,

                                                THOMAS A. TESTI, ESQ.
                                                By: _____
                                                Thomas A. Testi, Esq.
                                                Attorney for Defendant, Donald Trapp
                                                Supreme Ct. I.D. No. 36915
                                                P.O. Box 413
                                                Fairview, PA  16415
                                                (814) 474-2200
                                                (814) 474-1902—fax